THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NERI CARRANZA<br>　　　　　　　　　*Plaintiff,*<br><br>　　-- against --<br><br>GREEN & COHEN P.C.;<br>JASON GREEN<br>BEACON 109 245-251 LLC;<br>KENNETH FRIEDMAN; and<br>HENRY TAWIL<br><br>　　　　　　　　　*Defendants.* | Civil Action No. _____<br><br>**COMPLAINT AND JURY<br>DEMAND** |

Plaintiff Neri Carranza, by her attorneys at Manhattan Legal Services, for her

Complaint against Defendants GREEN & COHEN P.C., JASON GREEN, BEACON 109

245-251 LLC, KENNETH FRIEDMAN and HENRY TAWIL alleges as follows:

### PRELIMINARY STATEMENT

1.　　　Plaintiff Neri Carranza (hereinafter "Ms. Carranza") brings this action for

violations of the Fair Debt Collection Practices Act (hereinafter "FDCPA"), 15 U.S.C. §

1692, *et seq.,* which prohibits debt collectors from engaging in abusive, deceptive, or unfair

practices and the New York Consumer Protection Act (hereinafter "NYCPA"), N.Y. General

Business Law § 349, *et seq.,* which prohibits deceptive acts or practices in the conduct of any

business in New York State.

2.　　　Ms. Carranza is a disabled ninety-two year old whose only income is social

security.

3.     Ms. Carranza receives a senior citizen rent increase rent exemption (hereinafter "SCRIE") which limits her monthly share of the rent to $150.64.  The balance of her rent is paid by the SCRIE program through a property tax abatement credit (hereinafter "TAC") which is administered by the New York City Department of Finance (hereinafter "DOF").

4.     In June 2014, Defendant Beacon 109 245-251 LLC (hereinafter "Beacon") sent Ms. Carranza a rent demand threatening her with eviction if she did not pay rent arrears of over $5300.00, an amount that is more than half of Ms. Carranza's annual income.

5.     At the same time, Defendant Green & Cohen P.C. (hereinafter "Green & Cohen") sent Ms. Carranza an FDCPA notice identifying itself as a debt collector and notifying her they were seeking to collect the rent arrears claimed in the rent demand.

6.     At the time the notices were sent, Ms. Carranza was current in her share of the rent.

7.     When Ms. Carranza did not pay the arrears, Green & Cohen filed a nonpayment eviction proceeding on Beacon's behalf seeking to evict her.

8.     Receipt of the nonpayment petition caused, Ms. Carranza severe emotional distress as she believed she could lose her home unless she paid the landlord rent arrears which she did not owe and could not afford to pay.

9.     Although Beacon's own rent ledger indicated that Ms. Carranza had paid her share of the rent in full and subpoenaed DOF records demonstrated that the DOF had credited the landlord for a TAC in the proper amount so that Ms. Carranza's rent had been paid in full, Beacon continued to bill Ms. Carranza for rent arrears she did not owe and commenced a nonpayment proceeding against her by its attorneys Green & Cohen.

2

10.     Green & Cohen, appearing by its partner Green, continued to litigate the frivolous nonpayment proceeding for seven months and only consented to discontinue the proceeding with prejudice in February 2015 after Ms. Carranza made a motion for summary judgment.

11.     Defendants Green and Green & Cohen violated the FDCPA and the NYCPA by sending notices seeking to collect rent arrears which Ms. Carranza did not owe; threatening Ms. Carranza with eviction if she did not pay rent arrears which she did not owe; filing and litigating a meritless nonpayment proceeding seeking to evict Ms. Carranza; making false and misleading statements in court papers; and refusing repeatedly to discontinue the frivolous nonpayment case.

12.     Ms. Carranza seeks an injunction barring Defendants Green and Green & Cohen from engaging in such deceptive acts and practices, and to recover statutory damages, the assessment of civil penalties, and court costs and disbursements, including, but not limited to attorneys' fees.

13.     Beacon, its principal Defendant Kenneth Friedman (hereinafter "Friedman"), and its managing agent Defendant Henry Tawil, (hereinafter "Tawil") engaged in deceptive business practices in violation of the NYCPA by making false representations in written communications that Ms. Carranza owed rent arrears when she did not; sending rent bills and other communications stating that her share of the rent was higher than it was; sending communications stating that Ms. Carranza could be evicted if she did not pay rent arrears which she did not owe; commencing a nonpayment proceeding to evict Ms. Carranza which contained false and misleading statements about the amount of her monthly rent and her

3

liability for the SCRIE portion of the rent; and failing to correct their rent ledger to show that Ms. Carranza had a zero balance.

14.    Ms. Carranza seeks an injunction barring Defendants Beacon, Friedman and Tawil from engaging in such deceptive acts and practices, to recover statutory damages, costs and attorney's fees, and the assessment of civil penalties.

## JURISDICTION & VENUE

15.    This Court has jurisdiction pursuant to the FDCPA, 15 U.S.C. § 1692k(d), and 28 U.S.C. § 1331.

16.    This Court has supplemental jurisdiction over Plaintiff's claims under the NYCPA (GBL § 349) pursuant to 28 U.S.C. § 1367 because they share a common nucleus of operative fact with the federal claim and are so related to the federal claim as to form part of the same case or controversy under Article III of the United States Constitution.

17.    Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202.

18.    Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b) because the Defendants transact business there and the conduct complained of occurred there.

## PARTIES

19.    Neri Carranza is a natural person who resides at 247 W. 109th St. Apt. 2, New York, NY 10025 in the county of New York.

20.    Green & Cohen is a New York professional corporation with a principal place of business at 319 E. 91st St., Professional Suite, New York, NY 10128.

4

21.     Jason Green is a natural person who, upon information and belief, lives in New York State and is a partner in the law firm Green & Cohen P.C., which is located at 319 E. 91st St.,

22.     Beacon is a New York limited liability company.

23.     Beacon is the owner of numerous residential real estate properties in New York City, including Ms. Carranza's residence located at 247 W. 109th St., New York, NY 10025.

24.     Beacon maintains offices in New York County, located at 235 W. 109th St., Basement, New York, NY 10025.

25.     Upon information and belief, Defendant Kenneth Friedman is a principal of Beacon and Defendant Henry Tawil is its managing agent.

26.     Upon information and belief, Friedman's place of business is Beacon's office at 235 W. 109th St., Basement, New York, NY 10025.

27.     Upon information and belief, Tawil's place of business is 1509 E. 2nd St., Brooklyn, NY 11230.

28.     All Defendants transact business in the Southern District of New York.

### STATUTORY FRAME WORK

#### The Fair Debt Collection Practices Act

29.     Congress enacted the Fair Debt Collection Practices Act to stop "the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a).

30.     Under the FDCPA, "a debt collector may not use any false, deceptive, or misleading representations or means in connection with the collection of any debt." 15 U.S.C. § 1692e.

> a. "The threat to take any legal action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e(5).
>
> b. "Communicating or threatening to communicate to any person credit information which is known or which should be known to be false." 15 U.S.C. § 1692e(8).
>
> c. "The use of any false representation or deceptive means to collect or attempt to collect any debt." 15 U.S.C. § 1692e(10).

31.     A debt collector is further prohibited from the "use of unfair or unconscionable means to collect or attempt to collect a debt." 15 U.S.C. § 1692f.

32.     Prohibited conduct in violation of this section includes, but is not limited to, "The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692(f)(1).

33.     Further, a debt collector may not "engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d.

34.     Individuals are entitled to $1,000 in statutory damages and actual damages from a debt collector violating the above provisions of the FDCPA. 15 U.S.C. § 1692k(a)(2)(A).

35.     In a successful action, an individual may recover costs and reasonable attorney's fees as determined by the court.  15 U.S.C. § 1692k(a)(3).

### The New York Consumer Protection Act

36.     New York prohibits "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state. . . ." N.Y. Gen. Bus. Law § 349(a).

37.     An individual "injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions." N.Y. Gen. Bus. Law § 349.

38.     The damages award may be increased to an amount not to exceed three times the actual damages up to $1,000 if a court finds the Defendant willfully or knowingly violated this section. N.Y. Gen. Bus. Law § 349h.

39.     Under GBL § 349c, the court may assess additional civil penalties in the amount of $10,000.00 for deceptive conduct where the defendant knew their conduct was directed towards an elderly person and willfully disregarded the rights of the elderly person or where the elderly person suffered physical, emotional or economic damage from the defendants' conduct.

### New York City's Senior Citizen Rent Increase Exemption Program

40.     In 2005, the New York State Legislature amended the existing Real Property Tax Law to authorize municipalities to give property tax abatement credits for rent regulated property occupied by senior citizens who meet income eligibility requirements. R.T.P.L. § 467-b

41.     New York City created the Senior Citizen Rent Increase Exemption program to administer these property tax abatement credits. The New York City Department of Finance administers the SCRIE program.

42.     Regulations governing the SCRIE program are found at 9 N.Y.C.R.R. § 26-509.

43.     Under the SCRIE program, New York City pays rent increases for tenants who are senior citizens or disabled and who meet income eligibility requirements via tax abatement credits issued to the landlord.

44.     In order to be eligible for SCRIE, tenants must be 62 years of age or older, live in a rent regulated apartment and be income eligible.  N.Y.C. Admin. Code §26-601(d). Under N.Y.C. Admin. Code §26-516 and SCRIE program regulations set forth at 9 NYCRR 2202.20, landlords may not collect any rent increase from the tenant after they are approved for SCRIE as long as they remain eligible for the program.

## FACTS RELATING TO THE COMPLAINT

45.     Neri Carranza is a ninety-two year old disabled tenant who lives at 247 W. 109th St., New York, NY 10025.

46.     Her only income is social security of approximately $840.00 per month.

47.     Ms. Carranza is a "consumer" as defined by 15 U.S.C. § 1692a(3).

48.     Beacon is engaged in the business of owning, managing, renting and/or operating numerous residential real estate properties, including Ms. Carranza's residence, located at 247 W. 109th St., New York, New York 10025, which it purchased in May 2009.

49.     Beacon regularly collects consumer debts through its service of rent demand notices on its tenants and its filing of civil lawsuits.

50.     Friedman is a principal of Beacon and upon information and belief authorizes and oversees litigation relating to its tenants and the maintenance of records related to rental payments made by Beacon's tenants.

51.     Tawil is the registered managing agent for Beacon.

52.     Upon information and belief, Tawil generates, signs and mails rent demands to Beacon tenants and records and/or supervises the recording of rental payments made by Beacon's tenants.

53.     Green & Cohen regularly engages in the business of collecting debts by filing and litigating civil law suits for nonpayment of rent on behalf of Green & Cohen's clients, most of whom are landlords.

54.     Green & Cohen collects debts from housing consumers by using the mail to send court papers.

55.     Green & Cohen is a "debt collector" as defined by the FDCPA, 15 U.S.C. §1692a(6).

56.     Green is a partner at Green & Cohen and appears for Green & Cohen in housing court.

57.     Upon information and belief, Green drafts and serves FDCPA notices, court pleadings and conducts negotiations for Green & Cohen on behalf of its clients, most of whom are landlords.

58.     Green collects debts from housing consumers by using the mail to send court papers.

59.     Green is a "debt collector" as defined by the FDCPA, 15 U.S.C. §1692a(6).

60.     Ms. Carranza is a participant in the New York City SCRIE program which is

administered by DOF.

61.     Once found eligible for SCRIE, the portion of the rent that the eligible senior citizen tenant pays is frozen at the level in effect immediately prior to the actual rent in effect at the time of the initial application.

62.     The legal rent of tenants covered by the SCRIE program continues to increase as permitted by law, but the rent increases are paid by the DOF in the form of a property tax abatement credit ("TAC") made to the owner on an annual basis.

63.     Upon information and belief, DOF sends copies of SCRIE approvals and other SCRIE related documents to property owners to inform them of the amount of the TAC paid on behalf of the SCRIE participant, the SCRIE tenant's share of the rent, and whether the SCRIE is active.

64.     Ms. Carranza has participated in the SCRIE program since approximately 1988 and has continuously maintained her eligibility for the program.

65.     At all times relevant to this Complaint, the share of the rent that Ms. Carranza paid under the SCRIE program was frozen at $150.64.

66.     Ms. Carranza has paid her monthly share of the rent in the amount ordered by SCRIE since she was initially approved for a SCRIE in or about 1988.

67.     Beacon bought the building where Ms. Carranza lives in 2009.

68.     Upon information and belief, Beacon has been aware since at least 2010 that Ms. Carranza is a senior citizen through its agents' contacts with Ms. Carranza in her apartment, prior court proceedings and Ms. Carranza's receipt of a SCRIE.

69.     On November 13, 2013, in the context of a prior court case Beacon brought against Ms. Carranza, Ms. Carranza's attorney had provided Beacon's then attorney, Horing,

10

Welikson & Rosen, with DOF documents showing that Ms. Carranza's rent share under SCRIE was $150.64.

70.     At that time, Ms. Carranza's attorney had informed Horing, Welikson & Rosen that according to Beacon's rent ledger, Beacon was not crediting Ms. Carranza for the full amount of the SCRIE TAC, resulting in the rent ledger showing rent arrears when none were owed.

### Baseless debt notice and rent demand

71.     In June 2014, seven months after Ms. Carranza had notified Beacon through its attorney that its rent ledger was inaccurate, Beacon served Ms. Carranza with a three day rent demand ("rent demand") signed by Tawil alleging that Ms. Carranza owed rent arrears of $5385.10.

72.     The rent demand provided a breakdown claiming that Ms. Carranza owed $276.08 per month from December 2012 through June 2014 and $139.58 for November 2012.

73.     According to DOF records, however, Ms. Carranza's share of the rent was set at $150.64 from January 1, 2012 through December 31, 2015 and under SCRIE regulations she is not legally liable for payment of any rent that exceeds that amount.

74.     In June 2014, Green & Cohen mailed Ms. Carranza a notice dated June 23, 2014 pursuant to the FDCPA ("FDCPA notice") stating that it had been "retained to collect a debt for rent arrears totaling $5385.10" on behalf of its client Beacon, the same rent arrears claimed by Beacon in the rent demand.

75.     Upon information and belief, Defendants Beacon and Green & Cohen knew or should have known that Ms. Carranza did not owe any rent arrears at the time they served the rent demand and the FDCPA notice.

11

76.     Upon information and belief, Green & Cohen also knew or should have known that SCRIE recipients are not responsible for payment of the SCRIE TAC.

***Baseless Eviction Proceeding***

77.     In July 2014, Green & Cohen filed a nonpayment petition in housing court against Ms. Carranza seeking her eviction for failure to pay the $5,385.10 in arrears which Defendants claimed she owed in the rent demand and FDCPA notice.

78.     The nonpayment petition mirrored the rent demand and FDCPA notice by claiming that Ms. Carranza's monthly rent was $267.80 per month and that she owed all or part of the monthly rent from December 2012 through June 2014, although Ms. Carranza's actual share of the rent was limited to $150.64 per month pursuant to the SCRIE order.

79.     Ms. Carranza was current in her rent at the time Defendants commenced the nonpayment proceeding.

80.     The petition was verified by Green, a partner at the law firm of Green & Cohen, as Beacon's attorney.

81.     Pursuant to the verification, Green affirmed under the penalties of perjury that he knew the contents of the petition to be true except as to matters alleged upon information and belief, which he believed to be true based on statements and/or records provided by his client.

82.     As required by 22 NYCRR 130-1.1-a, Green signed the motion to certify that, to the best of his knowledge after an investigation that was reasonable under the circumstances, the court papers were not frivolous.

83.     On August 1, 2014, Ms. Carranza's counsel contacted Michael Cohen (hereinafter "Cohen"), a partner at Green & Cohen, and advised him that Ms. Carranza was a

disabled senior citizen; that she did not owe the arrears claimed because she had paid her

share of the rent each month in full; that the amount of the monthly rent arrears claimed by

Beacon exceeded Ms. Carranza's share of the rent under the SCRIE order; and that Beacon

appeared to be attempting to collect the SCRIE portion of the rent from Ms. Carranza.

84.     Cohen agreed to look into the matter.

85.     On August 6, 2014, Ms. Carranza's counsel sent copies of Ms. Carranza's

money order receipts to Cohen to show that Ms. Carranza had paid her share of the rent and

reminded Cohen that he had agreed to investigate the matter.

86.     When Ms. Carranza's counsel received no response from Cohen, she filed an

answer in the housing court proceeding asserting that Ms. Carranza did not owe the rent

arrears claimed in the petition and that the arrears claimed by Beacon, if owed, were

attributable to the SCRIE portion of the rent and therefore not collectible from Ms. Carranza.

87.     Throughout the seven months that Defendants litigated the nonpayment

proceeding, Ms. Carranza's attorney repeatedly informed Green, the Green & Cohen partner

who appeared for Beacon in court, that Ms. Carranza did not owe the rent arrears claimed in

the petition; that the landlord was suing Ms. Carranza for a rent which exceeded her share of

the rent under SCRIE and asked Green to discontinue the proceeding with prejudice.

88.     Specifically, on September 23, 2014, Ms. Carranza's attorney asked Green to

discontinue the proceeding after providing him with copies of Ms. Carranza's money order

receipts and SCRIE documents showing the amount of the TAC and that Ms. Carranza's

SCRIE was active.

13

89.     Green acknowledged receipt of these documents in a stipulation signed by the parties that same day, which adjourned the case to October 27, 2014, but was unwilling to discontinue the proceeding.

90.     On the adjourned date, Green provided Ms. Carranza's counsel with a rent ledger obtained from Beacon which acknowledged receipt of monthly rent payments from Ms. Carranza in the amount of $150.64 for all the months in which Beacon claimed she owed rent arrears.

91.     Ms. Carranza's counsel again asked Green to discontinue the proceeding.

92.     Green again refused to do so, continuing to allege that Ms. Carranza owed the rent arrears despite the fact that Beacon's records, DOF records and Ms. Carranza's money order receipts all showed she did not owe the debt.

93.     On October 27, 2014, the parties adjourned the proceeding for Ms. Carranza's counsel to subpoena SCRIE records at Defendants' insistence although she had already provided Defendants with copies of Ms. Carranza's SCRIE approvals.

94.     On the adjourned date of November 17, 2014, DOF produced SCRIE records which confirmed that Ms. Carranza's share of the rent was $150.64 and that her SCRIE was active and the landlord was receiving the TAC in the correct amount.

95.     Green again refused to discontinue the case and the parties adjourned the proceeding to December 23, 2014 for Defendants to review the SCRIE records produced in response to the subpoena.

96.     Before the next adjourned date, on November 28, 2014, Green sent an e-mail to Ms. Carranza's attorney containing a business record generated by Beacon which showed

14

that Beacon was billing Ms. Carranza for rent in the amount of $428.80 when her actual share of the rent was $150.64.

97.     The business record demonstrated that Beacon had not credited the full TAC paid by DOF to Ms. Carranza's account.

98.     Instead, Beacon added the uncredited portion of the SCRIE payment to Ms. Carranza's share of the rent as though it was part of her share of the rent and had not been paid.

99.     In effect, upon information and belief, Beacon was double billing Ms. Carranza for a portion of the rent which had already been paid by the TAC.

100.    This was the same accounting irregularity which Ms. Carranza's attorney had brought to the attention of Beacon's attorney Horing, Welikson & Rosen, P.C. in November 2013.

101.    When Beacon, through its attorneys Green & Cohen, continued to refuse to discontinue the nonpayment proceeding, Ms. Carranza's counsel filed a motion for summary judgment.

102.    After Green & Cohen failed to submit opposition to Ms. Carranza's motion despite being granted several adjournments to do so, Defendants consented to dismiss the nonpayment proceeding with prejudice in February 2015.

103.    The stipulation of discontinuance specified that the proceeding was discontinued because Ms. Carranza had paid her portion of the rent at the amount specified by the SCRIE order from January 2012 through November 2014.

104. The stipulation provided that Beacon would correct Ms. Carranza's rent bill to reflect that Ms. Carranza had a zero balance and to reflect the correct SCRIE tax abatement credit upon receipt of the December 2014, January 2015 and February 2015 rent.

105. Ms. Carranza had withheld the rent for December 2014 to February 2015 because the landlord had asked her to temporarily relocate in order to facilitate repairs, but the repairs had not been done and she remained out of possession.

106. Although Ms. Carranza paid the rent for December 2014 through February 2015 in compliance with the terms of the stipulation, Beacon still has not corrected her rent bill, which continues to show her owing rent arrears although she has paid all rent owed to date.

107. Upon information and belief, Beacon still has not completed the repairs although it has had unfettered access to the Ms. Carranza's apartment since in or about December 2014.

108. The receipt of court papers and notices threatening Ms. Carranza with eviction if she did not pay rent arrears she did not owe, as well as the defendants' prolonged litigation of the frivolous nonpayment proceeding, caused Ms. Carranza severe emotional distress.

109. Ms. Carranza experienced severe anxiety because she feared that she would lose her apartment and become homeless since she could not pay the rent arrears demanded.

110. Ms. Carranza also became extremely depressed after temporarily relocating when Beacon told her that she had to move out of her apartment in order for repairs to be completed.

111.    Ms. Carranza's depression deepened after Beacon failed to do the repairs even when it had unfettered access to the apartment, because she was cut off from her familiar surroundings and her community.

112.    In addition to depression, Defendants' conduct has caused Ms. Carranza to experience increased anxiety, stress, difficulty sleeping, and headaches.

113.    Ms. Carranza also suffered additional damages for the time and expenses incurred in defending the meritless nonpayment proceeding Defendants brought against her.

114.    Ms. Carranza now brings the instant action against defendants asserting that Green & Cohen and Green violated her rights under the FDCPA and the NYCPA and that Beacon, Friedman and Tawil violated her rights under the NYCPA.

## FIRST CLAIM

### Violations of Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (As to Defendants Green & Cohen and Green only)

115.    Plaintiff restates and incorporates the allegations of paragraphs 1 through 114 as if fully set forth herein.

116.    Defendants are debt collectors as defined by the FDCPA, 15 U.S.C. §1692a(6).

117.    Defendants have violated the Fair Debt Collection Practices Act.

118.    Defendants' violations include, but are not limited, to the following:

   a.    Making false representations and implications relating to the character, amount, and legal status of the debt in violation of 15 U.S.C. § 1692e(2);

   b.    Making false representations that Beacon had a right to collect the alleged debt;

17

c.     Making false representations and implications that, as attorneys, they engaged in a meaningful review of the non-payment petition before filing it in violation of 15 U.S.C. § 1692e(3)

d.     Threatening to take legal action to evict Plaintiff for nonpayment of the SCRIE portion of the rent which is not permitted under New York state law  in violation of 15 U.S.C. §  1692e(5);

e.     Using false representations and deceptive means to collect and attempt to collect a debt which was not owed in violation of 15 U.S.C. § 1692e(10);

f.     Using unfair or unconscionable means to collect a debt in violation of 15 U.S.C. § 1692f by threatening to evict Plaintiff if she did not pay rent arrears which she did not owe; and

g.     Engaging in conduct intended to harass, oppress, or abuse Plaintiff in the collection of a debt Defendant in violation of 15 U.S.C. § 1692d.

119.    As a result of the above violations, Defendants Green & Cohen and Green are liable to Plaintiff for statutory damages in an amount to be determined at the time of trial but not less than $1,000.00 per violation, plus actual damages, attorney's fees and costs.

## SECOND CLAIM

### Violation of New York Consumer Protection Act
### (As to all Defendants)

120.    Plaintiff restates and incorporates the allegations of paragraphs 1 through 114as if fully set forth herein.

121.    Defendants Green & Cohen, Green, Beacon, Friedman, and Tawil have violated the New York Consumer Protection Act.

122.    New York prohibits "deceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state …" N.Y. Gen. Bus. Law § 349(a).

123.    Defendants have used deceptive consumer-oriented acts and practices in the conduct of their businesses.

124.    Defendants' deceptive practices include but are not limited to:

    a.    False statements that Plaintiff's rent included a portion of the rent paid by her SCRIE tax credit;

    b.    Repeatedly sending Plaintiff notices and bills alleging that she owed rent arrears that she did not owe;

    c.    Threatening legal action against Plaintiff if she failed to pay rent arrears which she did not owe;

    d.    Commencing a baseless non-payment proceeding to recover fictitious rental arrears;

    e.    Failure to correct Beacon's records to remove rent arrears that Plaintiff does not owe and to correct the records to reflect Plaintiff's actual share of the rent.

    f.    Falsely representing that it would do repair work in Plaintiff's apartment if she temporarily relocated and then failing to do the Repairs.

125.    Defendants' deceptive consumer-oriented acts and practices are misleading to a reasonable consumer in a material way.

126.     Defendants' deceptive consumer-oriented acts and practices have a broad impact on consumers at large and cause injury and harm to the public interest, particularly to those who are elderly, disabled and receive a SCRIE or similar government benefits.

127.     Defendants committed the above-described acts willfully and/or knowingly.

128.     As a result of Defendants' violations of the NYCPA, Plaintiff has suffered compensable harm, including emotional distress.

129.     Plaintiff accordingly is entitled to an injunction barring Defendants from engaging in such deceptive acts and practices, actual damages, treble damages up to $1000, costs and attorney's fees.

130.     Because Defendants were aware that Plaintiff is a senior citizen and disregarded Plaintiff's rights and because Plaintiff was vulnerable because of her age and disability and suffered emotional damage as a result of Defendants' unlawful conduct, Plaintiff asks the court to assess a supplemental penalty of $10,000.00 against each Defendant as provided for in GBL §349(c).

### DEMAND FOR JURY TRIAL

131.     In accordance with Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all issues so triable.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that the Court:

(a)     Assume jurisdiction of this action;

(b)     Declare that Defendants Green & Cohen's and Green's actions violate 15 U.S.C. §§ 1692c, 1692d, 1692e, 1692f;

(c)     Declare that Defendants Beacon's, Friedman's, Tawil's, Green & Cohen's, and Green's actions violated N.Y. General Business Law § 349;

(d)     Enjoin Defendants from committing similar actions in the future;

(e)     Award Plaintiff compensatory and statutory damages pursuant to 15 U.S.C. § 1692k(a) and N.Y. General Business Law § 349(h);

(f)     Award Plaintiff treble damages under General Business Law §349 against all Defendants;

(g)     Assess Defendants Beacon, Friedman, Tawil, Green & Cohen and Green civil penalties of $10,000.00 respectively pursuant to N.Y. General Business Law 349(c);

(h)     Award disbursements, costs and attorneys' fees to the Plaintiff; and

(i)     Award Plaintiff such other and further relief as may be just and proper.

Dated: June 18, 2015

Respectfully submitted,

MANHATTAN LEGAL SERVICES
By:  Mary McCune (MM 3298)
One West 125th Street, 2nd Floor
New York, New York 10027
(646) 442-3143
mmccune@mls.ls-nyc.org